UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EDWARD N. MCCRAY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-2794** |
| **WARDEN MARLIN PEACHEY,<br>SHERIFF RODNEY STRAIN, JR., AND<br>SGT. COLPEL CROUCH** | **UNITED STATES MAGISTRATE<br>JUDGE KAREN WELLS ROBY** |

### ORDER AND REASONS

This matter is before the Court upon consent of the parties pursuant to Title 28 U.S.C. § 636(c). The defendants, Warden Marlin Peachey, St. Tammany Parish Sheriff Rodney "Jack" Strain, Jr., and Deputy Terry Crouch, filed a **Motion for Summary Judgment (Rec. Doc. No. 20)** seeking judgment as a matter of law. The plaintiff has also filed a **Motion to Strike Certain of Defendant's Exhibits Appended to Motion for Summary Judgment (Rec. Doc. No. 25)**, in which he argues that portions of the defendants' summary judgment exhibits were not provided in discovery, are not relevant to the motion, and are otherwise inadmissable and should be stricken from the record for these reasons. Upon review of the record, the Court has determined that these matters can be disposed of without an Evidentiary Hearing.

### I.     Factual Summary

The plaintiff, Edward N. McCray ("McCray"), filed this complaint pursuant to Title 42 U.S.C. § 1983, against Warden Peachey, Sheriff Strain, and Deputy Crouch, alleging that his

constitutional rights were violated because of the defendants' failure to provide him with protection from other inmates.

McCray alleges that, on or before August 19, 2005, he was housed in a juvenile facility where he was receiving treatment for dog bites, high blood pressure, and diabetes. He was transferred that day to the St. Tammany Parish Jail and placed in general population on tier A-100. He claims that he asked Deputy Crouch if he could be placed in a medical dormitory and his request was denied.

Later that same day, three inmates, Jerry Polk, Randy Johnson, and Marlon Brumfield, attacked McCray. McCray suffered a fractured jaw. McCray asked Deputy Crouch if he could be moved and Crouch allegedly replied "those guys do that to everyone we put over there."[1]

On August 23, 2005, McCray was again attacked by Polk, Johnson, and Brumfield and after the attack, he was stabbed in the eye with a sharp instrument by another inmate. McCray's eye was permanently and involuntarily removed.

McCray also alleges that as a result of the defendants misconduct and their institutional practices, the defendants failed to (1) properly discipline, restrict or control their employees, known to be irresponsible in their protection of inmates; and (2) properly discipline, train, and control employees known to be irresponsible in dealings with the medical needs of inmates. Furthermore, McCray contends that the Defendants failed to (3) take adequate precautions in hiring, promoting, and retaining police personnel; and (4) establish and/or assure the functioning of bona fide and meaningful department system for dealing with complaints of police misconduct.

---

[1] Rec. Doc. No. 1, p. 4, ¶20.

McCray further alleges that these conditions and restrictions were not related to any legitimate goal and instead caused him deprivation and hardship in violation of the Fourteenth Amendment of the United States Constitution. Alternatively, the plaintiff alleges that the defendants are also liable to him under the laws of the State of Louisiana. He asserts that the defendants actions amounted to intentional infliction of emotional distress, failure to protect, and negligent supervision in violation of the Fifth and Fourteenth Amendments and the Eighth Amendment.

He further alleges that prior to December of 2002, the St. Tammany Parish Sheriff's Office and the St. Tammany Parish Jail implemented policies and customs of inadequate and improper investigation of complaints of misconduct and instead tolerated acts of misconduct. These policies of inadequate supervision and training failed to adequately discourage constitutional violations by the deputies.

McCray alleges that he continues to suffer with severe pain and discomfort, including daily migraines due to the loss of the eye. He also alleges that he has experienced humiliation, emotional distress, and pain and suffering. He further incurred expenses and damages. As a result, he seeks compensatory damages, punitive damages, attorneys fees, costs, and interest from judicial demand.

## II.     The Plaintiff's Motion to Strike Portions of Exhibit 1 (Rec. Doc. No. 25)

The plaintiff filed a motion seeking to strike the defendants' Exhibit 1, except for part 1, page 13, part 2, page 18, and part 3, pages 1-9, to the summary judgment which is a complete copy of his prison file. The plaintiff alleges that the defendants did not produce the prison file during discovery. Furthermore, the information contained therein is not relevant to the issue of exhaustion or the claims raised in the complaint, nor would it be admissible at trial. The plaintiff also suggests that many of the documents in the file constitute hearsay and are unauthenticated.

The defendant opposes the motion on the basis that the production of the entire file demonstrates that there is no evidence of exhaustion in the file. The defendants also note that Deputy Warden Longino verified the copy by affidavit attached to Exhibit 3.

Fed. R. Civ. P. 56(c) requires summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In *Celotex*, 477 U.S. at 324, the United States Supreme Court stated the following:

> We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Obviously, Rule 56 does not require the nonmoving party to depose her own witnesses. Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves....

In explaining the application of this rule, the United States Fifth Circuit has held that "Celotex did not alter the settled law that 'Rule 56(e) requires the adversary to set forth facts that would be admissible in evidence at trial. Material that is inadmissible will not be considered on a motion for summary judgment because it would not establish a genuine issue of material fact if offered at trial . . ..'" *Thomas v. Atmos Energy Corp.*, 223 Fed. Appx. 369, 373-74 (5th Cir. Mar. 21, 2007) (*quoting Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 192 (5th Cir.1991). The *Celotex* holding permits that evidence be submitted in a form, such as an affidavit, that would ordinarily not be admitted at trial, so long as the form is one permitted by Rule 56(c). *Duplantis*, 948 F.2d at 192. However, it remains the case that inadmissible evidence itself cannot be used to support a motion for summary judgment. *CSC Credit Services, Inc. v. Equifax Inc.*, 119 Fed. Appx. 610, 616 (5th Cir. Dec. 27, 2004).

The Court has reviewed the entirety of Exhibit 1 and finds that the objected-to portions are not appropriate summary judgment evidence. Initially, the defendants have not challenged the plaintiff's assertion that the prisoner file presented as Exhibit 1 was not provided in response to the plaintiff's discovery. Defendants cannot rely upon documents not disclosed in response to discovery. Furthermore, the information is not relevant to the issues before the Court in this motion or to the testimony in Longino's affidavit. It is unnecessary to provide every document at the prison that is <u>not</u> an ARP grievance form.

For these reasons, the Court will grant the plaintiff's request to strike Exhibit 1, Part 1, pages 1-12 and 14-25; Part 2, pages 1-17 and 19-29; Part 3, pages 10-31; Part 4, pages 1-30; Part 5, pages 1-29; Part 6, pages 1-37; and Part 7, pages 1-33. This ruling will not prevent the defendants from presenting at trial any portion thereof that is later properly produced in discovery and/or which is shown to be admissible at trial. In connection with the pending motion for summary judgment, the Court will consider if necessary the remaining portions of Exhibit 1, that is, part 1, p. 13; part 2, p. 18; and part 3, pages 1-9.

### III. <u>Standards of Review for a Motion for Summary Judgment</u>

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Fields v. City of Southern Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). The Court's task is not to resolve disputed issues of fact, but to determine whether there exists any factual issues to be tried. *See Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49

(1986). In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party. *Id.*, at 248.

The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Once the moving party carries its burden of proving that there is no material factual dispute, the burden shifts to the nonmovant "to show that summary judgment should not lie." *Hopper v. Frank*, 16 F.3d 92, 96 (5th Cir. 1994). While the court must consider the evidence with all reasonable inferences in the light most favorable to the nonmovant, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." *Id.*

Instead, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue of fact for trial." *Celotex Corp*, 477 U.S. at 324. If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *See Szabo v. Errisson*, 68 F.3d 940, 942 (5th Cir. 1995); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994).

**IV.     Exhaustion Pursuant to Title 42 U.S.C. § 1997e(a)**

Title 42 U.S.C. § 1997e(a), as amended by the Prison Litigation Reform Act of 1996 ("PLRA"), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such

6

administrative remedies as are available are exhausted." The United States Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516 (2002). Therefore, by its very terms, the PLRA applies to the § 1983 claims raised by the plaintiff.

The failure to exhaust is an affirmative defense and "the PLRA does not itself require plaintiffs to plead exhaustion." *Jones v. Bock*, __ U.S. __, 127 S. Ct. 910, 921 (2007). Therefore, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Id*. (emphasis added). Instead, because exhaustion is an affirmative defense, defendants bear the burden of proof concerning ARP exhaustion both at trial and on a motion for summary judgment. *Id*.

"Thus, if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original); *accord Martin v. Alamo Community College Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). In the instant motion, the defendants rely upon the affirmative defense of failure to exhaust the ARP. The defendants therefore have the burden to establish that there is no material issue of fact for trial on that affirmative defense. *Id*., at 413.

If defendants fail to establish any essential element of their affirmative defense, *Id*., or if plaintiff introduces evidence sufficient to create a genuine material fact issue in dispute regarding an element of that defense, *Taita Chem. Co., Ltd. v. Westlake Styrene Corp.*, 246 F.3d 377, 388-89

(5th Cir. 2001), the motion for summary judgment must be denied. In this case, the defendants have failed to meet their burden on the affirmative defense of failure to exhaust.

In the summary judgment motion, the defendants argue only that they are entitled to judgment as a matter of law.[2] They provide absolutely no basis for this relief in the motion itself. However, in their memorandum in support of the motion, the defendants discuss the applicable law that requires a prisoner, before filing suit in federal court, to exhaust the prison's administrative remedies procedure pursuant Title 42 U.S.C. § 1997e(a). Defendants assert that McCray failed to file a timely grievance form addressing his claims, which includes the attacks by fellow inmates and his requests for protection or removal from his tier.

The relevant portions of Exhibit 1, which have not been stricken, show that McCray has not filed a timely grievance form.[3] The affidavit of Deputy Warden Greg Longino, Exhibit 3 (as amended by Rec. Doc. No. 22), indicates that the St. Tammany Parish Jail has an ARP available to all inmates. However, neither the exhibits nor the affidavit indicate whether the ARP was in place when McCray was taken into the St. Tammany Parish Jail on August 23, 2005, or when he was attacked on the days following.

Longino's affidavit indicates that the ARP is now in place. Now is not the relevant time period. The ARP must have been in place and available in August of 2005. The summary of the ARP attached to his affidavit is not dated nor does it indicate an effective date for the procedure.

Also, Exhibit 1, part 2, p. 18, indicates that McCray was given a copy of the prisoner manual on March 1, 2007. This was over 18 months after the incidents complained of in his complaint.

---

[2] Rec. Doc. No. 20, p.1.

[3] Rec. Doc. No. 20, Exhibit 1 (as modified by the order to strike).

8

McCray states in his affidavit that he did not receive notice of an ARP at St. Tammany Jail prior to that date.

McCray was required to exhaust administrative remedies available at the time of the incident. There is no showing made by the defendants that the ARP addressed by Longino was in place at that time. The existence and availability of an ARP in August of 2005 remains an issue of fact.

Assuming *arguendo* that the ARP was in place, Longino also attests that an inmate must initiate the ARP within 90 days of the incident.[4] First, defendants' argue that McCray did not file anything under the ARP within 90 days of August 23, 2005. McCray does not refute this. However, as noted above, there is a genuine issue of fact as to whether McCray had been advised of this policy. In his affidavit, he indicates that he was not given a prisoner manual upon his arrival at St. Tammany Parish Jail in August of 2005 nor was he advised by the prison guards of the procedure. McCray could not have been expected under the law to comply with a procedure which was not imparted to him.

Furthermore, the policy summary attached to Longino's affidavit and which is addressed in his affidavit, conflicts with what McCray was told to do in response to his January 8, 2006, grievance form. Longino states that, in order to initiate the process, "an inmate must fill out the inmate grievance form."[5] The defendants' Exhibit 2 reflects that McCray apparently filed a grievance form with the prison officials on January 8, 2006, which addressed the inmate attacks and failure to protect.[6]

---

[4]Rec. Doc. No. 20, 22, Exhibit 3, p. 2, ¶7.

[5]Rec. Doc. No. 20, 22, Exhibit 3, p. 2, ¶6.

[6]Rec. Doc. No. 20, Exhibit 2.

The grievance form is stamped received by the prison officials on January 18, 2006. Under the section of the form marked "FOR WARDEN'S USE," the word "RETURNED" is circled. Next to it is a handwritten notation which states, "Not following procedure. You must fill out a complaint first."

In the procedure outlined by Longino as the official ARP policy, there is absolutely no mention of any requirement that a "complaint" be filed before the grievance form. To the contrary, Longino clearly states that a grievance form must be filed. The grievance form submitted by McCray on January 8, 2006, is identical to the form attached to Longino's affidavit and which Longino indicates is required to initiate the ARP process.[7]

The instructions given to McCray on January 18, 2006, were in conflict with the alleged procedure he was supposed to follow. McCray can only be required to follow an ARP policy that is available. His effort to follow the only policy alleged to be available to him was rejected solely on the basis that some other complaint process or policy was apparently in existence. Deputy Warden Longino apparently does not know about the complaint process because it is nowhere reflected in his affidavit or the attachments thereto. Clearly, an issue of fact exists regarding which policy was in place or had to be followed.

In a curious twist, the defendants also suggest that McCray never filed the complaint which he was instructed to file on January 18, 2006, and therefore failed to complete exhaustion of the ARP process. McCray alleges in his affidavit that he completed a complaint form and submitted it to an unknown prison guard on January 23, 2006.[8] An issue of fact exists as to whether the

---

[7]Rec. Doc. No. 20, 22, Exhibit 3.

[8]Rec. Doc. No. 29; *see also*, Rec. Doc. No. 20, Exhibit 2.

complaint was submitted to a guard and/or never processed by prison officials. Perhaps because a complaint was not part of the ARP policy outlined by Longino, the prison officials did not know what to do with the complaint when or if it was submitted by McCray. An issue of fact exists regarding whether the complaint was necessary under an ARP policy at the prison and whether it was submitted to a guard in an effort to comply with the prison's ARP.

For the foregoing reasons, the defendants have failed to meet their burden and have instead left several genuine and relevant issues of fact unresolved on the issue of exhaustion. *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1274 (5th Cir. 1994); *Celotex Corp.*, 477 U.S. at 323 (explaining that the party seeking summary judgment always bears the initial responsibility of demonstrating to the district court the absence of a genuine issue of material fact, even when the non-movant bears the burden of proof at trial); *Russ v. Int'l Paper Co.*, 943 F.2d 589, 592 (5th Cir.1991) (noting that the movant must satisfy its obligation that there are no fact issues warranting trial before the non-movant is required to produce any evidence in opposition to the summary judgment motion). Accordingly,

**IT IS ORDERED** that the **Motion to Strike Certain of Defendant's Exhibits Appended to Motion for Summary Judgment (Rec. Doc. No. 25)** filed by the plaintiff, Edward N. McCray, is **GRANTED** and Exhibit 1, Part 1, pages 1-12 and 14-25; Part 2, pages 1-17 and 19-29; Part 3, pages 10-31; Part 4, pages 1-30; Part 5, pages 1-29; Part 6, pages 1-37; and Part 7, pages 1-33, are **STRICKEN** from the record.

**IT IS FURTHER ORDERED** that **Motion for Summary Judgment (Rec. Doc. No. 20)**, filed by the defendants, Warden Marlin Peachey, Sheriff Rodney "Jack" Strain, Jr., and Deputy

Terry Crouch, is **DENIED** because genuine issues of fact exist as to the issue of exhaustion which prevents summary judgment as a matter of law.

New Orleans, Louisiana, this ____6th____ day of _____November_____, 2007.

_____
**KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE**