UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| EDWARD N. MCCRAY | CIVIL ACTION |
| VERSUS | NO. 06-2794 |
| WARDEN MARLIN PEACHEY,<br>SHERIFF RODNEY STRAIN, JR., AND<br>SGT. COLPEL CROUCH | UNITED STATES MAGISTRATE<br>JUDGE KAREN WELLS ROBY |

### ORDER AND REASONS

This matter is before the Court upon consent of the parties pursuant to Title 28 U.S.C. § 636(c). The defendants, Warden Marlin Peachey, St. Tammany Parish Sheriff Rodney "Jack" Strain, Jr., and Deputy Terry Crouch, filed a second **Motion for Summary Judgment (Rec. Doc. No. 61)** seeking judgment as a matter of law on the issue of exhaustion of administrative remedies as required by 42 U.S.C. § 1997e. The plaintiff has also filed an opposition to the motion and a **Motion to Strike Defendant's Second Motion for Summary Judgment (Rec. Doc. No. 65)**, in which he argues that the defendants' summary judgment is repetitive and unsupported by any new argument or exhibits.

### I.     Factual Summary

The plaintiff, Edward N. McCray ("McCray"), filed this complaint pursuant to Title 42 U.S.C. § 1983, against Warden Peachey, Sheriff Strain, and Deputy Crouch, alleging that his

constitutional rights were violated because of the defendants' failure to provide him with protection from other inmates.

McCray alleges that, on or before August 19, 2005, he was housed in a juvenile facility where he was receiving treatment for dog bites, high blood pressure, and diabetes. He was transferred that day to the St. Tammany Parish Jail and placed in general population on tier A-100. He claims that he asked Deputy Crouch if he could be placed in a medical dormitory and his request was denied.

Later that same day, three inmates, Jerry Polk, Randy Johnson, and Marlon Brumfield, attacked McCray. McCray suffered a fractured jaw. McCray asked Deputy Crouch if he could be moved and Crouch allegedly replied "those guys do that to everyone we put over there."[1]

On August 23, 2005, McCray was again attacked by Polk, Johnson, and Brumfield and after the attack, he was stabbed in the eye with a sharp instrument by another inmate. McCray's eye was permanently and involuntarily removed.

McCray also alleges that as a result of the defendants misconduct and their institutional practices, the defendants failed to do the following: properly discipline, restrict or control their employees, known to be irresponsible in their protection of inmates; properly discipline, train, and control employees known to be irresponsible in dealings with the medical needs of inmates; take adequate precautions in hiring, promoting, and retaining police personnel; and establish and/or assure the functioning of bona fide and meaningful department system for dealing with complaints of police misconduct.

---

[1] Rec. Doc. No. 1, p. 4, ¶20.

McCray further alleges that these conditions and restrictions were not related to any legitimate goal and instead caused him deprivation and hardship in violation of the Fourteenth Amendment of the United States Constitution. Alternatively, the plaintiff alleges that the defendants are also liable to him under the laws of the State of Louisiana. He also asserts that the defendants' actions amounted to intentional infliction of emotional distress, failure to protect, and negligent supervision in violation of the Fifth and Fourteenth Amendments and the Eighth Amendment.

He further alleges that prior to December of 2002, the St. Tammany Parish Sheriff's Office and the St. Tammany Parish Jail implemented policies and customs of inadequate and improper investigation of complaints of misconduct and instead tolerated acts of misconduct. These policies of inadequate supervision and training failed to adequately discourage constitutional violations by the deputies.

McCray alleges that he continues to suffer with severe pain and discomfort, including daily migraines due to the loss of the eye. He also alleges that he has experienced humiliation, emotional distress, and pain and suffering. He further incurred expenses and damages. As a result, he seeks compensatory damages, punitive damages, attorneys fees, costs and interest from judicial demand.

## II.   The Plaintiff's Motion to Strike (Rec. Doc. No. 65)

The plaintiff filed a motion seeking to strike the defendants' second motion for summary judgment on the issue of exhaustion. The plaintiff alleges that the defendants' motion is virtually identical to the first motion and that none of the self-serving statements in Warden Longino's affidavit have documentary support. The defendants' oppose the motion arguing that the current motion for summary judgment cites to new law and addresses the issues of fact pointed out in the Court's prior ruling on the first motion for summary judgment.

Since the filing of the motion to strike, the defendants moved for and were granted leave to attach the documentation referenced by Longino in the affidavit to the second motion for summary judgment.[2]  The amended exhibit will be addressed in the substantive discussion to follow.

Nevertheless, with respect to the plaintiff's motion to strike, the arguments with regard to repetitiveness are well received.  However, similar arguments are made by the plaintiff in the opposition to the motion to summary judgment.  Thus, striking the motion would still require the Court to consider its validity as it stands alone and with respect to matters already addressed in the prior motion.  Thus, rather than strike the motion, the Court will address its substance and the arguments raised in the opposition thereto.  The plaintiffs' Motion to Strike is denied.

### III.     Standards of Review

#### A.     Motion for Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Fields v. City of Southern Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).  The Court's task is not to resolve disputed issues of fact, but to determine whether there exists any factual issues to be tried.  *See Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986).  In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party.  *Id.*, at 248.

The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence

---

[2] Rec. Doc. Nos. 67, 73.

of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Once the moving party carries its burden of proving that there is no material factual dispute, the burden shifts to the nonmovant "to show that summary judgment should not lie." *Hopper v. Frank*, 16 F.3d 92, 96 (5th Cir. 1994). While the court must consider the evidence with all reasonable inferences in the light most favorable to the nonmovant, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." *Id.*

Instead, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue of fact for trial." *Celotex Corp*, 477 U.S. at 324. If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *See Szabo v. Errisson*, 68 F.3d 940, 942 (5th Cir. 1995); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994).

    **B.**    **Exhaustion Pursuant to Title 42 U.S.C. § 1997e(a)**

Title 42 U.S.C. § 1997e(a), as amended by the Prison Litigation Reform Act of 1996 ("PLRA"), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The United States Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or

some other wrong." *Porter v. Nussle*, 534 U.S. 516 (2002). Therefore, by its very terms, the PLRA applies to the § 1983 claims raised by the plaintiff.

The failure to exhaust is an affirmative defense and "the PLRA does not itself require plaintiffs to plead exhaustion." *Jones v. Bock*, __ U.S. __, 127 S. Ct. 910, 921 (2007). Therefore, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Id.* (emphasis added). Instead, because exhaustion is an affirmative defense, defendants bear the burden of proof concerning Administrative Remedy Process ("ARP") exhaustion both at trial and on a motion for summary judgment. *Id*.

"Thus, if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." (emphasis in original) *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986); *accord Martin v. Alamo Community College Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). In the instant motion, the defendants rely upon the affirmative defense of failure to exhaust the ARP. The defendants therefore have the burden to establish that there is no material issue of fact for trial on that affirmative defense. *Id.*, at 413.

If defendants fail to establish any essential element of their affirmative defense, *id.*, or if plaintiff introduces evidence sufficient to create a genuine material fact issue in dispute regarding an element of that defense, *Taita Chem. Co., Ltd. v. Westlake Styrene Corp.*, 246 F.3d 377, 388-89 (5th Cir. 2001), the motion for summary judgment must be denied. In this case, the defendants still have failed to meet their burden on the affirmative defense of failure to exhaust for the following reasons.

**IV.     Analysis**

In the summary judgment motion, as they did in the prior motion, the defendants argue that McCray failed to file a timely complaint or a timely grievance form addressing his problems at the prison, which includes the attacks by fellow inmates and his requests for protection or removal from his tier. McCray argues that the defendants have not established that he was properly advised of the procedures prior to March of 2007 and that he attempted to exhaust the process he knew prior to the filing of his federal civil rights complaint.

Exhaustion of available administrative remedies "'means using all steps that **the agency holds out**, and doing so properly (so that the agency addresses the issues on the merits).'" (emphasis added); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). As noted by the defendants, proper use of the prison grievance system requires a prisoner "to file complaints and appeals in the place, and at the time [as] the prison's administrative rules require." *Pozo*, 286 F.3d at 1025; *see also Woodford*, 548 U.S. at 90 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules").

A prisoner's failure to timely file a grievance in accordance with the prison's grievance procedures constitutes a failure to exhaust properly. *See Woodford*, 548 U.S. at 87-90. A prisoner's failure to appeal the denial of a grievance and pursue his claim at each level of available administrative review constitutes a failure to exhaust. *Dixon v. Page*, 291 F.3d 485, 489 (7th Cir. 2002). If the prisoner fails to properly use the prison's grievance process, the prison administrative authority can refuse to hear the case, and the prisoner's claim can be considered indefinitely unexhausted. *Pozo*, 286 F.3d at 1025; *see also Woodford*, 548 U.S. at 89-90.

The defendants and the plaintiff recognize that, in addressing the defendants' first motion for summary judgment, the Court determined that genuine issues of fact existed as to whether the complaint and grievance processes outlined in the motion were in place in August of 2005, whether McCray was on notice of the policies, and whether McCray exhausted available remedies prior to filing this suit. The Court is not convinced that these issues are resolved any differently by the present motion.

In support of the motion, the defendants have again attached the affidavit of Deputy Warden Greg Longino, Exhibit 1 (as amended by Rec. Doc. No. 67-3). The affidavit indicates that the St. Tammany Parish Jail had in place in August of 2005 a dual level procedure for inmates to voice concerns at the jail. The "true copy" of the process and forms is not dated nor does it indicate an effective date for the procedure summarized therein.

Nevertheless, the process addressed by Longino in the affidavit is summarized in relevant part as follows. On May 5, 2005, the jail implemented a procedure known as the Inmate Complaint Procedure ("ICP").[3] This "informal" process required the inmate to submit a written complaint, outlining his allegations, to the mail personnel who is to pass it on to the Captain of Operations.[4] A response is due from him within five days.[5] If the issue is not resolved, the inmate can then proceed to the ARP.[6]

This process provides for an inmate to complete a grievance form, a copy of which is attached to the defendants' exhibits. The grievance, as described by Longino, must be filed within

---

[3] Rec. Doc. No. 61, Exh. 1; Rec. Doc. No. 67-3.

[4] *Id.*

[5] *Id.*

[6] *Id.*

90 days of the incident. Longino outlines the delays by which the reviewing officers must respond and by which the inmate must appeal. According to Longino and the policy provided, the reviewing officer must respond at the first step within 15 working days.

Longino also indicates that, if the inmate does not hear from this officer within 20 days, he may proceed to the second step within the next five days. This privilege is not mentioned in the copy of the ARP process attached to the affidavit.

According to the affidavit, the second step of the process is an appeal to the Warden. Longino does not indicate the length for his review. The policy attached indicates 25 working days.

The third step, outlined by Longino, is an appeal to the Sheriff, who has 40 working days to respond. Again, Longino indicates that if the inmate does not receive a response from the Warden or the Sheriff, at their respective steps, he must proceed to the next step. The only step remaining after the Sheriff is to file suit. All of these steps and dates are briefly outlined on the Inmate Grievance, Response to Grievance, Warden's Review Decision, and Sheriff's Review Decision, forms attached to Longino's affidavit, as amended.

Longino also attests that these policies were in the inmate handbook, were in the library, and were posted throughout the prison. The forms were available to inmates for the asking from the tier deputies.

In addition to the affidavit, the defendants also attach a copy of the grievance form filed by McCray on January 8, 2006, over four months after the incident. The grievance form, which if Longino's policy is accurate, must have been obtained by McCray from the prison. This grievance form is curiously different from the grievance form Warden Longino claims was being used at the time.

For example, McCray's 2006 form indicates that the inmate "must send this to the Warden within 30 days of the incident of which you are complaining."[7] A simple glance at the 2006 form indicates that the section entitled "FOR WARDEN'S USE," is of a different configuration. In addition, on the 2006 form the reviewing officer checked the blank indicating it was "[f]iled more than 30 days after the incident." The form attached to Longino's affidavit has a blank indicating "[f]iled more than 90 days after the incident." The time periods are unexplainably different. The Court also must ask why a reviewing officer would indicate McCray's grievance to be untimely after 30 days if the policy in place, according to Longino, would have given McCray 90 days. While the 2006 form deadline is more onerous for McCray, it is not the 90 day period outlined by Longino and provided for on the Inmate Grievance attached to his affidavit.

Longino's affidavit, and documentation, are therefore factually different from the other summary judgment evidence presented in connection with the alleged untimeliness of McCray's exhaustion efforts. The Court cannot reconcile how McCray was supposed to know when to file his complaint or grievance where defendants' own evidence is internally inconsistent.

The Court also notes that Longino's affidavit is not sufficient to resolve whether McCray was given an inmate handbook. There is no new evidence to indicate that he was given a handbook prior to March 1, 2007. McCray denies that he did. Thus, the summary judgment evidence does not establish that McCray received a handbook or instruction on the complaint/grievance process upon his arrival at the jail on or about August 19, 2005.

Longino's affidavit also suggests that the policies were posted throughout the prison, which was sufficient to put McCray on notice. However, as noted above, Longino's policy attachments

---

[7]Rec. Doc. No. 61, Exh. 2.

are not dated with a release or revision date. He indicates that the ICP was adopted in May of 2005. There is nothing to support this portion of his affidavit. As was true with the first motion for summary judgment, the policy copies simply are not dated and nothing but the affidavit indicates when the policies became effective.

These matters notwithstanding, the Court recognizes that a question still exists as to whether McCray's January 2006, forms accomplished exhaustion for purposes of § 1997e. The ICP explained by Warden Longino indicates that the Captain of Operations will answer the complaint within five working days. It also provides that "if your complaint is not remedied[,] proceed to the ARP Procedure." In this case, the defendants deny that a complaint was filed. McCray, however, responds in his affidavit that he tendered an Inmate Complaint Form to prison officials on January 23, 2006, and received no response.

Under federal law, if the grievance system allows and instructs for an appeal if a prisoner receives no response to a grievance, the prisoner may be required to continue with the grievance process to its conclusion to exhaust administrative remedies. *See Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). In this case, unlike the ARP policy outlined by Longino, the ICP does not specifically instruct an inmate what to do if he does not hear back from the reviewing officer. A prisoner is not required to appeal when the institution's grievance procedures is silent as to what the inmate should do when he receives <u>no response</u> to a grievance filed at the initial level of a multi-step review process. *Id.*, 423 F.3d at 682.

Assuming that the phrase "not remedied" was intended by prison officials to be synonymous with "no response," it may not have been clear to an inmate in McCray's circumstances that he was <u>required</u> to proceed to the ARP. This also is not made clear by Longino's affidavit or from a reading

of the policy itself. *See Martin v. Sizemore*, 2005 WL 1491210 at *2 (E.D. Ky. June 22, 2005) (holding that administrative remedies were not "available" to plaintiff because policy set forth in inmate handbook was not a PLRA-compliant mandatory administrative remedy, based upon the following: (1) it merely suggested that an inmate "may" file grievance, (2) it was not exclusive in that nowhere did it indicate that it provided the sole method an inmate may utilize in registering a grievance, (3) it made no reference to the PLRA, (4) it did not state that a grievance was mandatory for any purpose, (5) it was misleading, as the title is "Complaints" as opposed to "Grievance" or "Administrative Remedy," and (6) it stated that only "legitimate" complaints would be answered.)

The Court notes that factual determinations regarding exhaustion under § 1997e(a) are often a "swearing match" between jail officials and an inmate regarding whether a resolution process was posted or properly noticed. The defendants have twice attempted to show with insufficient evidence that a policy was in place at the jail and that McCray knew about the policy and failed to comply with it. Twice the defendants have failed to meet there burden of establishing that McCray failed to exhaust administrative remedies as envisioned by § 1997e.

As a general rule, "[i]ssues of credibility and the weight afforded to certain evidence are determinations appropriately made by a finder of fact and not a court deciding summary judgment." *McCormick v. City of Ft. Lauderdale*, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003). However, "[b]ecause a motion contesting a prisoner's exhaustion of administrative remedies does not reach the merits of [the prisoner's] underlying claim, 'the court may look beyond the pleadings and decide disputed issues of fact.'" *Lucus v. Barnes*, 2007 WL 1428884 at *3 (S.D. Ga. May 14, 2007) (citing *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *cert. denied*, 540 U.S. 810 (2003)). Federal case law has resolved that exhaustion should be determined by the court and not a jury. *Bryant v.*

*Rich*, __ F.3d ___, 2008 WL 2469405 at *5 (11th Cir. 2008); *Pavey v. Conley*, 528 F.2d 494 (7th Cir. 2008); *see also*, *Amador v. Superintendents of Dept. of Corr. Servs.*, 2007 WL 4326747 (S.D.N.Y. Dec. 4, 2007); *Wyatt*, 315 F.3d at 1119-20 (court may decide disputed issues of fact in motion to dismiss for nonexhaustion); *Priester v. Rich*, 457 F. Supp.2d 1369, 1377 (S.D. Ga. 2006) (same); *Dukes v. Doe*, 2006 WL 1628487 at *6 (S.D.N.Y. June 12, 2006) (ordering an evidentiary hearing on question of exhaustion)).

In so doing, the court can decide factual issues in a jurisdictional or related type of motion because there is no right to a jury trial as to that portion of the case. *See Wyatt*, 315 F.3d 1119-20. Because this matter will proceed to trial before a jury, it is incumbent upon the Court to resolve the exhaustion issue prior to trial.

Based on the foregoing, the record provides information sufficient to justify or excuse McCray's failure to complete some level of exhaustion at the jail. Justification is determined by "looking at the circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way." *Giano v. Goord*, 380 F.3d 670, 678 (2d Cir. 2004). For example, a prisoner's reasonable interpretation of ambiguous regulations may justify the failure to exhaust if, based on his interpretation, he reasonably believed the remedies were unavailable to him. *Id.*

In this case, the Court has already pointed out the inconsistencies in what Warden Longino attested to as the posted policies and the forms actually in use in 2006. The Court is not convinced by the evidence that the policies outlined by Longino were actually in place, or posted, at the relevant time. There is no evidence that McCray was adequately advised of the complaint or

13

administrative processes in place at the prison on and after August 19, 2005. McCray also denies that he was given a handbook upon his arrival in 2005, and defendants have not shown otherwise.

Similarly, the facts do not show that in January of 2006, McCray was instructed that the failure to receive a response to his Inmate Complaint required him to pursue relief through the ARP process, which he may or may not have had notice of personally or by a posting. The undersigned determines that the evidence before the Court is not sufficient to establish that McCray violated a clear, posted or available administrative policy at the prison. His failure to complete the exhaustion requirement was justified which precludes the defendants' exhaustion defense. Accordingly,

**IT IS ORDERED** that the **Motion to Strike Defendant's Second Motion for Summary Judgment (Rec. Doc. No. 65)** filed by the plaintiff, Edward N. McCray, is **DENIED**.

**IT IS FURTHER ORDERED** that **Motion for Summary Judgment (Rec. Doc. No. 61)**, filed by the defendants, Warden Marlin Peachey, Sheriff Rodney "Jack" Strain, Jr., and Deputy Terry Crouch, is **DENIED**.

New Orleans, Louisiana, this 22nd day of July, 2008.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**